HARRY GROTHE, JR., DOING BUSINESS AS HARRY GROTHE
CONSTRUCTION COMPANY, APPELLANT, V. THEODORE
ERICKSON, SR., APPELLEE.

59 N. W. 2d 368

Filed June 26, 1953. No. 33316.

J. V. Benesch and Fraser, Connolly, Crofoot & Wenstrand, for appellant.

Paul W. Eagleton and Keith Hopewell, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is an action to foreclose a mechanic's lien.

Plaintiff is a contractor with headquarters in Omaha. He is a nephew of defendant's wife. Plaintiff alleged that on or about June 15, 1950, he entered into an oral contract with defendant to construct a dwelling house "at a cost of all materials, supplies and labor therefor plus 10%." The house was to be built at Craig, Nebraska.

Plaintiff alleged full performance on his part; that the total amount payable to him was $18,016.25; that the defendant paid thereon $16,972.97, leaving a balance due of $1,043.28, which the defendant refused to pay; that he had filed a lien claim of record within time; and plaintiff prayed for judgment in that amount together with interest and for a sale of the premises for the amount found due.

Defendant filed a general denial. By way of cross-petition he alleged that plaintiff represented to him that he could obtain labor and materials at a lower cost than could defendant and that relying on those representations he entered into an oral agreement whereby plaintiff "was to represent defendant in the construction" of the house; that plaintiff "would supervise the work, * * * obtain the best of labor, * * * and materials," and construct the house in accord with defendant's plans and instructions; that plaintiff was to be paid "a sum equal to ten per cent of the cost of the labor and materials he obtained"; that plaintiff was "to use his best efforts to obtain such labor and materials at the lowest cost possible and that defendant was to receive the benefit of any discounts or rebates, which plaintiff might receive"; and that on certain "lumber which defendant had purchased or was about to purchase" plaintiff would receive no compensation, nor was plaintiff to receive compensation on labor furnished by defendant. Defendant alleged payments of $16,500; and that after payments had been made that he discovered improper and excessive charges and overpayment in the sum of $4,000, more or less, and an inability to state the proper amount because plaintiff had all records. He prayed that plaintiff be required to furnish an accounting of the cost or reasonable value of the materials and labor furnished by him "under the contract for the construction of said dwelling house for which he has made claim by his petition"; and that he recover for all excessive charges and for equitable relief.

For reply plaintiff denied generally.

No objections to the sufficiency of the pleadings were made.

The trial court found that the pleadings and evidence established a principal-and-agent relationship; that plaintiff had violated his legal obligation as defendant's agent and should be denied all personal gain and compensation for the construction of the house; that plaintiff had

forfeited $2,135.78, in commissions charged; and that these commissions, with other items which the court allowed as credits to defendant, amounting in all to $3,162.42, should be set off against plaintiff's total bill. The petition for foreclosure was denied and judgment for the defendant against the plaintiff was entered in the sum of $2,119.14.

Plaintiff appeals, assigning error in the denial of the foreclosure of his lien and error in various credits given to defendant and in awarding judgment against the plaintiff. We affirm in part, reverse in part, and remand with directions.

Plaintiff testified that he was to be paid on a cost plus 10 percent profit; and that for the 10 percent he was to supervise, lay out, and see that the house was built. Defendant testified that plaintiff was "to supervise the construction, * * * was supposed to hire the help and supervise it and buy all this stuff at a discount for me in Omaha, which he led me to believe he could do better than I could," and that defendant agreed to give plaintiff 10 percent.

"The independent contractor on a 'cost-plus-a-percentage-of-cost' basis is one who undertakes the construction required by the contract and the owner reimburses him for the costs of materials, labor, etc., and the contractor's profit or gain is to be a certain percentage of the total cost of the project. These types of contractors are legally classified as independent contractors. * * * the contractor is certainly an independent contractor, if the provisions of the contract make him so and do not in any way indicate or state that the parties intended that it was a contract of employment or agency * * *." Standard Oil Co. of Louisiana v. Fontenot, 198 La. 644, 4 So. 2d 634.

"In a 'cost plus' contract the performing party's profit is limited to the amount specified and the paying party would get the advantage of any excess profit

earned." Paper Mill Supply Co. v. Container Corporation, 301 Pa. 62, 151 A. 588.

A cost-plus contract as generally understood is one where the total cost to the contractor represents the whole payment to be made to him, plus a stated percentage of profit. See A. W. Feeser, Inc. v. American Can Co., 2 F. Supp. 561.

An authoritative text states the rule as follows: "In a cost plus contract, the performing party's profit is limited to the amount specified, and the paying party gets advantage of all profits." 17 C. J. S., Contracts, § 10, p. 329.

We hold the oral contract here to be a cost-plus contract entered into between an owner and an independent contractor.

This case was tried by the parties, without objection, as an accounting action as to specific charges made by the plaintiff against the defendant. The right to charge, the amount of charges, and the amount of credits due defendant were the issues actually tried. They started with the base total charge of $18,016.25, and undertook to determine what, if any, specific charges should be deducted therefrom. It appears that as a result of negotiations preliminary to the filing of the lien plaintiff conceded erroneous charges in the sum of $429.98, which plus 10 percent, amounted to $472.97. This amount plaintiff credits as a payment in addition to the $16,500, concededly paid, and it reduced the amount of his claim to the $1,043.28, which he pleads as the amount due. We follow the procedure of the trial court.

The record shows that plaintiff submitted itemized bills as the work progressed and defendant made payments thereon from time to time. It appears that both parties contemplated a final settlement of the account as a whole when the work was completed.

We find nothing in the pleadings or evidence that justified the conclusion of the trial court that the plaintiff had forfeited and should be denied the commission

of 10 percent charged. We reverse the finding of the trial court that defendant is entitled to a credit of $2,135.78, for 10 percent commission charged.

In connection with commissions charged, plaintiff charged $526.61 on lumber and other material purchased from or through a lumber company in Craig. The evidence of defendant is that he had arranged for the purchase of lumber before making this contract with plaintiff. The total of the lumber bill was $5,265.61, and upon that basis plaintiff made the charge of 10 percent. Defendant paid the bill in full. Plaintiff testified that he was to receive a commisison on that lumber purchased by defendant. Defendant testified that no commisison was to be charged on lumber purchased by himself. The only way plaintiff knew how much commission to charge was by asking the lumber company the amount of the total bill. Plaintiff incurred no financial liability in connection with the lumber purchased by defendant. The defendant furnished considerable labor and other items upon which plaintiff made no claim to a commission. We think that the lumber purchased by defendant properly falls in the class of items upon which plaintiff was not to receive a commission. However, it appears that $1,802.66, of this total of $5,265.61, was for items of mill work, etc., purchased by plaintiff upon which it is conceded here he would be entitled to a commission of $180.26. Defendant then is entitled to a credit on that item of $346.35, it being an improper charge.

The trial court allowed the defendant a credit of $25 for house plans. It appears that preliminary to this contract defendant had secured a picture of a house, from a newspaper, with floor plans. He also had a blueprint of floor plans. He desired changes in those plans. Plaintiff made a penciled plan of the changes in floor arrangement, windows, etc. This was done about the time the contract was made. He charged this as a cost item and without a percentage added. This obviously was not a cost to the plaintiff and was an item which we

think, under the circumstances here, was an improper charge. As to that item the judgment of the trial court is affirmed. Defendant is entitled to a credit of $25 on that item.

Plaintiff made three charges for the services of an accountant in preparing statements to be submitted to defendant. These totaled $30, to which was added 10 percent, making a total of $33. There is no showing as to the cost of this service. This appears to be an item properly chargeable to the cost of plaintiff in doing his contracting business and not a charge properly made against the defendant. The trial court's disallowance thereof is affirmed. Defendant is entitled to a credit of $33 on that item.

The plaintiff charged the defendant with personal wages in the sum of $654, plus 10 percent or a total of $719.40. It appears from the evidence that plaintiff charged for all time put in on the job, on time spent going to and from the job, and in getting materials, labor, etc. Plaintiff testified that he told defendant he would charge $2.50 an hour for his time in addition to the 10 percent. This defendant denied. There is some evidence of work actually done on the job by plaintiff such as staking out the ground for excavation, helping build forms for the foundation, and pounding nails in cupboards. There is a charge of $13.75, consisting of 5 hours at $2.50 an hour, plus 10 percent, for work done in changing locks which the trial court did not disturb. It appears that plaintiff was at this time doing five or six jobs, concurrently. His time cards appear to have been in court and were examined by counsel but not put in evidence. Except as to the above 5 hours there is no showing of the time actually put in doing work on the job other than that which properly plaintiff was required to do under his cost-plus contract. This charge appears clearly to have been a charge whereby plaintiff sought compensation in addition to and for services included in his agreed 10 percent commission. It was

properly allowed the defendant as a credit on the account. Defendant is entitled to a credit of $719.40 on this item.

It appears from the evidence that plaintiff employed a plumber on this job whose total bill for labor and material was $3,376.14. Upon this plaintiff charged a commission of 10 percent. It further appears from the evidence that plaintiff received a rebate from the plumber of 5 percent on this bill for services in laying out and directing the work and that he did not give defendant credit for this amount. It appears then that plaintiff charged the defendant $168.81, more than the cost of this work to him, and upon that charged also 10 percent or a total of $185.69. The work done for the plumber was work which plaintiff was required to do for the defendant under his cost-plus contract. The trial court gave defendant a credit of $168.81 for this item. To that should be added the commission charged of 10 percent or a total of $185.69. Defendant is entitled to a credit for that item.

The trial court allowed defendant a credit of $13.50 for overcharges on wages paid a Mr. Harriger and $15.33 on wages paid a Mr. Watts. Plaintiff's exhibits show that there was charged for wages of Harriger a total of $987.25. An itemized breakdown of wages paid by plaintiff to Harriger shows a total of $973.75, or an overcharge of $13.50 in carrying forward the total of the labor items. Likewise the exhibits show a total of $897.55 charged for wages of Watts, and the itemized breakdown of these wages shows a total of $895.72, or an overcharge of $1.83. Plaintiff testified that these exhibits were correct. These appear to have been clerical errors, but nevertheless, overcharges. Defendant is entitled to a credit therefor of $15.33, plus 10 percent which was charged, or a total of $16.86 on these two items.

The trial court found that there had been an overcharge on stone delivered to the house by plaintiff in the sum of $60. The statements show stone hauled from

plaintiff's shop on September 27, without a charge being made, and a later charge of $112.50 for stone hauled from the shop. The evidence is that there were two loads delivered of approximately 2 tons and that the one charge covered the two loads. The charge appears to be a proper one for two loads. The trial court erred in allowing the $60 as an overcharge.

The evidence shows that there was a small cement mixer available at Craig to be used without cost to defendant. Plaintiff brought to Craig from Omaha on two trips, a larger and more efficient cement mixer which he owned. For use and hauling plaintiff charged defendant $60 to which he added a 10 percent commission. He also charged $2.74, plus 10 percent for gas furnished to the employee who hauled the mixer to Craig. The trial court allowed a credit to the defendant for this amount of $60. Plaintiff testified that the charge was reasonable and that he never rented it out for less than $35 a day; that it was worth $25 a day "if it is used"; and that he never told defendant he was going to charge for the use of the cement mixer. It seems clear from the evidence that plaintiff charged the defendant, not with the cost of the use of the mixer, but with its rental price, including a profit, and then charged in addition a commission thereon. We find no evidence as to the cost of this use, if any, to plaintiff. Under the circumstances the trial court properly allowed the defendant a credit therefor which together with the commission charged should have been $66. Defendant is entitled to a credit of $66 for that item.

We summarize the items which we find were improperly charged to defendant and for which the defendant is entitled to credit:

| | |
|---|---:|
| Overcharge on lumber commission | $ 346.35 |
| House plans | 25.00 |
| Accounting | 33.00 |
| Plaintiff's labor | 719.40 |
| Plumbing - rebate not given | 185.69 |

| | |
|---|---:|
| Cement mixer use | 66.00 |
| Overcharge Harriger and Watts wages | 16.86 |
| | $1,392.30 |
| Less balance of bill submitted and not paid | 1,043.28 |
| Balance showing amount of overpayment by defendant | $ 349.02 |

The judgment of the trial court in denying a foreclosure of the mechanic's lien is affirmed. Because of the matters stated herein the judgment of the trial court is reversed and the cause remanded with directions to enter a decree releasing the plaintiff's lien of record and awarding defendant a judgment against the plaintiff in the sum of $349.02. All costs are to be taxed to the plaintiff.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.

WENKE, J., participating on briefs.