GLENN M. TIMMONS, DOING BUSINESS AS TIMMONS
CONSTRUCTION CO., APPELLANT, V. ANDREW C. NELSEN
ET AL., APPELLEES.
66 N. W. 2d 406

Filed October 8, 1954.    No. 33514.

*Frost, Peasinger & Meyers,* for appellant.

*Pilcher & Haney* and *Morgan & Carnazzo,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is a suit to foreclose a mechanic's lien on a new house in the claimed amount of $8,231.17. The answer of the defendants alleges an oral contract between the parties by which plaintiff agreed to build the house for $32,075.20. Defendants paid $33,500 to the plaintiff and they claim an over-payment of $1,424.80. Defendants also filed a counterclaim for damages in the amount of $4,000 for the failure of the plaintiff to construct a driveway into the garage in accordance with the agreement. The trial court found that plaintiff had established a valid mechanic's lien in the amount of $4,315.64 and ordered a sale of the property to satisfy the lien if it was not paid within 20 days. The counterclaim was dismissed. The plaintiff appealed and the defendants have taken a cross-appeal.

For convenience, Andrew C. Nelsen will hereafter be referred to as the defendant where only one defendant is indicated.

The record discloses that plaintiff was a general contractor engaged in the building of new houses in the city of Omaha during the times herein mentioned. It appears that on or before June 1, 1950, plaintiff had constructed a house adjacent to his own, which he had for sale. Defendant and his wife became interested in this house, inspected it several times, and talked with plaintiff about its sale price. It was subsequently sold to one DeMoss for $32,500. Thereafter the defendant talked with plaintiff about building him a new house similar

to the DeMoss house. Defendant purchased a lot and commenced negotiations with the plaintiff for the construction of a new house. Defendant testified that plaintiff told him that the DeMoss house cost him $26,932 exclusive of the cost of the lot, and that he could duplicate it at $29,000 or $29,500 on any lot that defendant might select. It is the contention of the defendant that they calculated the cost of the house by using the basic cost of the DeMoss house in the amount of $26,932, and adding thereto the cost of changes to be made in the amount of $2,500 and a 10 percent profit amounting to $2,943.20. From the total cost thus calculated, amounting to $32,375.20, defendant claims a deduction of $300 arising from an alleged saving of that amount in substituting concrete floors for wood floors. Defendant asserts that plaintiff agreed to build the house for $32,075.20.

It is the contention of the plaintiff that the house was to be built in accordance with the plans of the DeMoss house, with the changes agreed upon prior to the commencement of construction and any other changes requested by the defendant in the course of construction. The evidence shows that plaintiff prepared a written contract to this effect which the defendant did not execute. The defendant gave as his reason that he desired his attorney to go over it. It appears that for one reason or another the contract was not submitted to defendants' attorney. The work proceeded without any written agreement being made and upon the oral agreements of the parties.

The trial judge found from the evidence that plaintiff had failed to establish an agreement that the house was to be built at cost plus 10 percent. The trial judge also found that there was no fixed sum agreed upon for the construction of the house, as claimed by the defendants. The court then found that the mechanic's lien was valid in the amount of $36,014.90, the amount found due for labor and materials, plus 5 percent thereof, or

$1,800.75, for services of the plaintiff in supervising the construction of the house, making a total cost of $37,815.65. Payment of $33,500 of this amount was paid by defendants, leaving a balance due of $4,315.65, which the court decreed to be a lien upon the property. Both parties filed motions for a new trial. Both motions were overruled and plaintiff appealed. The defendants cross-appealed.

The defendants contend that the description of the labor and materials used in the construction of the house was insufficient to create a lien. We shall not determine this issue on its merits. Defendants failed to set forth in their assignments of error on their cross-appeal any claim of error on the part of the trial court in ruling on this issue. Under such circumstances the error, if any existed, will be deemed to have been waived. Okuda v. Hampton, 154 Neb. 886, 50 N. W. 2d 108.

Defendants also claim that the proof was insufficient to establish that the mechanic's lien was filed within 4 months of the date of performance as required by section 52-103, R. R. S. 1943. The notice of lien shows that a number of items were furnished in March 1951. Specific days of that month were not designated as the days on which the labor and materials were furnished. The mechanic's lien was filed on June 5, 1951. Assuming that all items shown to have been furnished in March 1951 were furnished on the first day of that month, the filing of the notice of lien was well within the 4-month period required by the statute.

The contention of the defendant that an oral agreement was made to the effect that plaintiff was to build the house for $32,075.20 cannot be sustained in this court. It is true that defendant produced evidence to this effect. The evidence of the plaintiff was in direct conflict therewith. The rule in such instances is: Where, in a suit in equity on a trial de novo, the evidence is in irreconcilable conflict, this court will consider the fact

that the district court observed the conduct and demeanor of the witnesses and gave credence to the testimony of some rather than to the contradictory testimony of others. Hehnke v. Starr, 158 Neb. 575, 64 N. W. 2d 68; Lakey v. Gudgel, 158 Neb. 116, 62 N. W. 2d 525. The finding of the district court on this contention is affirmed.

The evidence shows that plaintiff commenced the construction of the house without a written agreement being executed. A written contract was prepared on a cost plus 10 percent basis. Defendant did not execute it because he desired his attorney to examine it. He knew that plaintiff understood the agreement to be on a cost basis with a 10 percent profit. He does not appear to have objected, and permitted plaintiff to proceed with the work. Monthly statements for labor and materials were submitted, containing a 10 percent charge which was designated as profit. Defendant paid $5,000 per month thereon for 6 months. He knew, or should have known, all during this period that plaintiff was charging the cost plus 10 percent. He permitted plaintiff to continue with the construction on that basis. Defendant wanted the subcontracting of special work submitted for competitive bidding. He procured one or two bids for plaintiff, a clear indication that he at that time understood that the work was proceeding on a cost plus basis. The original invoices were turned over to defendant each month and retained by him. This, also, is evidence supporting the contention of the plaintiff that the house was not being constructed for a fixed amount. We think the evidence considered as a whole sustains plaintiff's allegation that the house was being constructed on a cost plus 10 percent basis and that the trial court's finding to the contrary is not supported by the evidence.

The defendant contends that plaintiff failed to hold the cost of the construction down by failing to consider bids by subcontractors that were less than those accepted by the plaintiff. There is evidence of one or

two bids by subcontractors which were smaller than those to whom the bids were let. Plaintiff pointed out in his rebuttal evidence that those bids did not include all the work necessary to be performed and that they were in fact larger bids when the scope of the bids was considered. The defendant failed to show by a preponderance of the evidence that he suffered loss by the failure of the plaintiff to accept competitive bids.

The defendant alleges that plaintiff made a charge of $500 for cost of supervision which is claimed to be improper for the reason that costs of general supervision are included in the 10 percent allowed over and above the cost of labor and materials. The trial court properly disallowed this item. This point was recently so determined by this court in Grothe v. Erickson, 157 Neb. 248, 59 N. W. 2d 368. To hold otherwise would in effect allow a double payment for the same service.

The record shows that plaintiff employed one Fred Hintz, his brother-in-law, as a general foreman. It was his duty to see that materials and equipment were on hand, and otherwise coordinate the work on the various houses under construction by the plaintiff. He also performed some work in constructing the house, such as grading, constructing footings for the foundation, delivering materials, and hauling forms, scaffolds, and other equipment to and from the premises. The work which was supervisory in character is included in the 10 percent charged over and above the cost of labor and materials. It is work which plaintiff agreed to perform as a part of his cost plus agreement. The fact that he required assistance because of the number of projects he had under construction is the concern of the plaintiff and an item of expense which he must assume. It is not a proper charge in addition to the 10 percent that plaintiff was to receive as his profit. Grothe v. Erickson, *supra*. The work he actually performed in the construction of the house is chargeable as labor. The plaintiff charged $1,957.50 for the services rendered by Hintz.

The trial court found that the sum of $489.38 of this amount was properly chargeable to labor on the house. We find no evidence in the record to sustain this finding. In fact, there is no evidence purporting to separate the work actually performed on the premises from that which was supervisory in character. We necessarily conclude that the allowance of any part of the charges based on payments to Hintz as a part of the lien must fail for want of proof. Consequently, we disallow the $1,957.50 as a lien on the property.

There is evidence in the record that materials were hauled away from the premises by the plaintiff. Such materials were not accurately described or identified. Plaintiff states that forms, scaffolds, and equipment were moved to and from the premises throughout the construction of the house. He testified also that materials and supplies which exceeded his needs were removed from the premises and credit memoranda given therefor which were in the record. The evidence fails to show that any materials or supplies which were charged to the construction of the house were taken from the premises.

The notice of lien contains a charge of 10.5 percent for tax and insurance on labor, the amount charged being $584.24. The accountant who audited the invoices and charges computed the insurance and taxes on the following basis: Federal social security tax, 1.5 percent; state unemployment compensation, 3 percent; and workmen's compensation, property damage and public liability insurance, 6 percent. There is no issue before us as to whether or not these items are lienable. We do not, therefore, determine that question. It is contended, however, that the items were not proven. With this contention we concur. There is no evidence in this record that this $584.24 or any part of it was contracted for or paid. Assuming only for the purposes of this suit that such taxes and insurance were proper charges to be included in a mechanic's lien, the record is devoid of

the proof required to show that such amount was spent, that the charge was reasonable, and that it was spent for the sole benefit of the premises upon which the lien was claimed.

Defendant contends in his cross-appeal that the trial court erred in dismissing his counterclaim. By his counterclaim defendant contended that it was agreed that the driveway should be graded down to an elevation where automobiles could enter without great difficulty because of ice or snow; that the driveway was to be so constructed as to make it safe to drive automobiles over it at all times. Defendant alleges that the driveway was not so built and that it will be necessary to lower the driveway and garage floors 2 feet at a cost of $4,000. He claims damages for this amount.

The plans do not show the elevations of the lot or the grade upon which the house, garage, and driveway were to be built. There were no specifications accompanying the plans. We find no evidence to sustain any special agreement with reference to the grade of the driveway. There is testimony in the record that, while the grading of the lot was being performed, the defendant directed that it not be graded down any lower than as it now is. This evidence was not disputed. We point out here that changes in the plans were made before and after construction was started and that defendant directed changes at any time with which plaintiff complied. There is evidence that it is very difficult to use the driveway when it is covered by ice and snow. We find, however, that there was no agreement fixing the grade for the driveway and that defendant participated in fixing the grade of the house and garage, and necessarily that of the driveway. The trial court properly dismissed the counterclaim on the basis of the evidence before the court.

Labor and materials set forth in the notice of lien are found to be proper except as we have herein found to the contrary.

We find that the mechanic's lien has been established for the following amounts: Labor used in constructing the house, $3,606.69; materials and supplies, $31,334.59; and for supervision, profit, etc., $3,494.12. The total amount of lienable items is $38,435.40. The evidence shows that $33,500 has been paid to the plaintiff, leaving a balance of $4,935.40 for which plaintiff is entitled to a lien.

It is therefore found that plaintiff has a valid lien for $4,935.40, and in the event said sum is not paid within 30 days from the issuance of the mandate herein, plaintiff may apply to the district court for an order of sale to satisfy the lien. The $4,935.40 will bear interest at the rate of 6 percent per annum from the date of the filing of this opinion in this court. The costs in this court are taxed against the defendant. The decree of the district court is reversed and the cause remanded with directions to enter a decree in accordance with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.