ERNIE T. JENSEN, APPELLEE, v. MARGARET A. MANTHE ET
AL., APPELLANTS.

95 N. W. 2d 699

Filed April 3, 1959. No. 34552.

*Richard A. Dier,* for appellants.

*Dryden & Jensen,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE,
CHAPPELL, and BOSLAUGH, JJ.

CARTER, J.

Plaintiff brought this action to foreclose a mechanic's
lien in the amount of $821.89. The defendants alleged
that plaintiff entered into an oral contract to construct
a house on the property here involved; asserted that the
amount had been fully paid; and asserted that plaintiff
therefore had no basis for a lien. The defendants, by
cross-petition, alleged that plaintiff failed to complete the
house in accordance with his contract and that they were
compelled to expend $1,137.20 to complete it; and prayed
for a judgment in that amount. The trial court found
for the plaintiff and against the defendants and directed

a foreclosure of the mechanic's lien in the amount of $528.08 with interest at 6 percent from August 14, 1957. The defendants have appealed.

In September 1955, the defendants desired to build a new house on the real estate described in the petition. They found a rough drawing of a house in a book of house plans which appeared to meet their desires. They took the drawing to plaintiff to determine the cost of constructing such a house. Plaintiff estimated that it would cost $15,000. Plaintiff informed defendants that an accurate estimate could not be made until detailed plans had been prepared. The parties agreed to have plans prepared, which was done. Thereafter plaintiff submitted the plans to subcontractors and obtained bids from them. He then approached the defendants and offered to contract for the building of the house for $15,000. The defendants declined to enter into such a contract because they could not afford to put that much money into the house. Negotiations were then commenced to reduce the cost of the house.

Plaintiff submitted a written estimate based on the following: Excavation, $100; cement work, $1,200; material, $4,800; plumbing and heating, $2,200; painting labor, $585; paint, $300; floor covering, $1,280; electrical work and fixtures, $378; and labor, $3,600; a total of $14,443. The plaintiff indicated that an additional charge of $225 for labor on the fireplace should be added. Plaintiff stated that after calling the lumber dealer and obtaining a 5 percent discount on the lumber, and the defendants agreeing to do the inside painting, the defendants said to go ahead with the construction. Plaintiff testified that he told defendants the figures were an estimate only and that it would not vary more than 10 percent either way.

The defendants testified that the negotiations between the parties occurred generally as testified to by the plaintiff. Their evidence, however, is to the effect that after securing the 5 percent discount on the lumber,

and the defendants agreeing to do the inside painting, the plaintiff agreed to build the house for $14,200.

Whether or not there was a meeting of the minds of the parties on a firm contract to construct the house for $14,200 constitutes the primary issue in the case. The evidence of the parties on that point is in direct conflict.

There is evidence in the record, however, which indicates what the parties intended. The manner in which the parties interpreted the agreement before the dispute arose is ordinarily a safe guide in determining the true nature of the contract.

Plans were prepared as a guide to the construction of the house. Specifications as to materials to be used or the type of appliances to be installed were never provided. We think it would be unusual for a builder to enter into the construction of a house under a firm contract at such an amount without complete plans and specifications. The evidence shows that the defendants paid subcontractors direct. The plaintiff testified that this was because the defendants desired to select the subcontractors and secure those who would give them discounts on the cost. Defendants testified that they paid subcontractors to relieve plaintiff of the necessity of borrowing money at the bank, a matter which was of no concern to them if the house was being built under a firm contract. Ordinarily, direct payment of subcontractors by the owner is evidence that no firm contract was agreed upon. See Timmons v. Nelsen, 159 Neb. 193, 66 N. W. 2d 406. There is evidence that plaintiff went to the defendants and told them they could save on materials and labor by using cement stone instead of tile in the foundation. They approved, stating that they desired to save money wherever they could. The plaintiff suggested using cement stones instead of brick in the fireplace for the same reasons and defendants approved the savings. These instances are clearly incon-

sistent with defendants' contentions that a firm contract was made.

The defendants contend, on the other hand, that they paid subcontractors only on the approval of the plaintiff. It seems to us, however, that plaintiff as the builder, was obliged to approve such payments as a protection to the owner, whether or not he was working under a firm contract or on a time and material cost basis. The record shows also that all of the inside painting was not done by the defendants and that there was no discussion as to the effect of this on the amount of the alleged firm contract. There was no discussion as to the effect upon the alleged firm contract of savings made with subcontractors other than those the plaintiff had procured during the preliminary negotiations.

The trial court saw and heard the witnesses as they testified. It had a better opportunity to appraise the credibility of the witnesses than does this court. The trial court resolved the conflicting evidence in favor of the plaintiff. While this court tries appeals in equity de novo, we must necessarily consider the findings of the trial judge on matters that are in irreconcilable conflict. Wilkie v. Banse, 166 Neb. 138, 88 N. W. 2d 181; Marston v. Drobny, 166 Neb. 747, 90 N. W. 2d 408. For the reasons stated, the record supports a finding that there was no firm contract to construct the house for $14,200 which resulted from a definite offer and unconditional acceptance by the parties. The agreement was for the construction of the house on a "time and materials" cost basis as plaintiff contended.

The evidence shows that plaintiff received a discount of 5 percent on the materials purchased from the lumber dealer which amounted to $293.01. The defendants are entitled to credit for the amount of this discount. Grothe v. Erickson, 157 Neb. 248, 59 N. W. 2d 368. It is the general rule that the profits made and advantages gained by a builder in the execution of work on a cost basis belong to the owner, in the absence of an agreement

to the contrary. 2 Am. Jur., Agency, § 268, p. 215.

The defendants contend that they are entitled to credit for overcharges made by plaintiff for the labor employed to construct the house. This contention is based on the wages paid to employees Gard, Bickford, Bruening, Laue, and Forsburg. The evidence shows that Gard worked 125 hours and was paid $1.75 per hour. The defendants were charged $2 per hour for the work performed by Gard. Similar increased charges were made on the wages paid the other employees named, the total amount of the added charges being $491.15. The plaintiff testified that it was customary to increase the wage rate actually paid in billing the owner to cover the cost of compensation and liability insurance, the use of tools, the use of machinery and tools in his shop, and for the use of his pickup truck in hauling tools and materials to and from the job.

The defendants paid the bills submitted by the plaintiff as the work progressed, including the amounts claimed to have been expended for labor. The defendants had no knowledge that they were paying wage rates in excess of those actually paid to the employees. They have not waived their rights in the matter by making payments on labor costs, such payments having been made without knowledge of the added charges.

Under contracts designated as "cost plus" agreements, the amount owing the builder should be computed on the basis of the amount actually spent for labor, materials, and supplies which go into and become a part of the finished structure, including the amounts paid to subcontractors. Such items are generally understood to include the cost of supervision, the cost of compensation and liability insurance or other insurance which he is required to carry, and the cost of hauling, storage, and usual operating expenses. Generally speaking, overhead, charges for equipment, depreciation of equipment used, and general taxes are not proper charges as they are treated as within the percentage of profit agreed

upon. In a "time and materials" agreement in which the builder is to receive no percentage profit, and is paid going wages only for his time, the builder should be allowed all costs and charges incurred which are reasonably necessary to the completion of the project. In other words, the builder is entitled to be paid the reasonable value of all the services rendered by him. It is fundamental that under a "cost plus" or "time and materials" contract a builder may not charge for labor an amount that is not reasonable and proper, nor an amount in excess of that which he actually paid. Lytle, Campbell & Co. v. Somers, Fitler, & Todd Co., 276 Pa. 409, 120 A. 409, 27 A. L. R. 41.

We necessarily conclude that the excess charges for labor in the amount of $491.15 are not proper and cannot be allowed as a cost of labor. The evidence of the plaintiff that such charges were made in lieu of other charges which were proper to be made under the contract is not a compliance with the duty he owes to the owner. The builder must list his costs, and where in so doing absolute accuracy is not possible an estimate based on known facts may be used. But a builder is not permitted to misinform the owner on one item of expense to escape the necessities of proof on another when he is working on a cost basis. The excess charges do not appear to have been fraudulently made. They may therefore be disallowed without destroying the balance of the lien. Platner Lumber Co. v. Theodore, 120 Neb. 804, 235 N. W. 467; Rivett Lumber & Coal Co. v. Linder, 113 Neb. 567, 204 N. W. 77.

In the instant case there is no proof in the record as to the cost of insurance, use of tools, depreciation, or the value of the use of the pickup truck. Any recovery for these items must fail for want of proof.

We point out also a further reason for a true and correct itemization of the costs of construction on a contract such as we have before us. Not all items of expense in constructing a building are subject to a lien

under the mechanic's lien law. § 52-101, R. R. S. 1943. Consequently the amount of the personal judgment obtained in a mechanic's lien foreclosure action may exceed the amount for which the lienor may be entitled as a lien. It would be highly improper to permit a lienor to include items of cost or expense which were not in fact subject to a lien under the mechanic's lien law.

We conclude that defendants are entitled to credit for the discount on material received by the plaintiff in the amount of $293.01. We find also that defendants were improperly charged for excess labor in the amount of $491.15. There being no evidence in the record to sustain the cost of the items alleged to have formed the basis of the overcharges for labor, they must be disallowed for want of proof. The plaintiff is entitled to a decree foreclosing his mechanic's lien in the amount of $37.73. He is also entitled to a personal judgment for the same amount. The decree of the district court is modified in the respects noted and the decree as modified is affirmed.

AFFIRMED AS MODIFIED.

YEAGER and WENKE, JJ., participating on briefs.