J. J. LaPuzza DOING BUSINESS AS J. J. LaPuzza CONSTRUCTION COMPANY, ET AL., APPELLEES, v. PROM TOWN HOUSE MOTOR INN, INC., A NEBRASKA CORPORATION, APPELLANT.

217 N. W. 2d 472

Filed April 25, 1974. No. 39113.

No appearance for appellant.

Schmid, Ford, Mooney, Frederick & Caporale, Thomas J. Monaghan, and Young, Kuhn & Liakos, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, MC-COWN, NEWTON, and CLINTON, JJ., and BUCKLEY, District Judge.

SPENCER, J.

Prom Town House Motor Inn, Inc., a Nebraska corporation, appeals from the foreclosure of several mechanic's liens filed as the result of the remodeling of the Prom Town House Motor Inn in Omaha, Nebraska. The record embraces seven large volumes. No purpose will be served by discussing the facts in detail. We affirm as modified.

After several preliminary conferences between representatives of the defendant and J. J. LaPuzza, doing business as J. J. LaPuzza Construction Company, the parties entered into a written construction contract in February 1972. Article 2 of the contract described the

work to be performed as follows: "The Contractor, shall perform all the Work required by the Contract Documents for remodeling of certain areas in the Prom-Town House Motor Inn, including generally the areas known and designated as the Piano Bar and the Hawaiian Room, and to make certain modifications and additions to the exterior of the building known as the Administration Building and to the parking lot located West of said building, all in accordance with plans and specifications prepared by Robert Hunter, Architect, and the Owner."

The amount of the contract is specified in Article 5 as follows: "The Owner shall pay the Contractor for the performance of the Work, subject to additions and deductions by Change Order as provided in the Conditions of the Contract, in current funds, an amount equal to the cost of all labor, materials and equipment incorporated in the Work. The Contractor shall not be entitled to reimbursement for any amounts for said overhead, supervision, contract administration, insurance, profit, building permit or other fees or licenses, and all similar expenses. The Contractor shall pay for all such items of expense necessary for the initiation, prosecution and completion of the Work.

"The Owner hereby agrees to pay to the Contractor for profit and general overhead, and for the other expenses to be borne by the Contractor pursuant to this agreement, a sum equal to twenty-five per-cent (25%) of the actual cost of the work."

The contract was prepared in Kansas City for defendant on the instructions of one of its directors by his attorneys. Where there is a question as to the meaning of a contract, it is to be construed most strongly against the party preparing it. Podewitz v. Gering Nat. Bank (1960), 171 Neb. 380, 106 N. W. 2d 497.

Work commenced on February 16, 1972. Defendant made a progress payment of $21,665.36 on April 27, 1972,

pursuant to the contract. Subsequently, a conflict arose between LaPuzza and defendant concerning the total cost of the project and defendant refused to make further payments. Mechanic's liens were thereafter filed by LaPuzza and the other plaintiffs herein, who are materialmen or subcontractors.

Defendant denied the allegations of the plaintiffs' petition, contested the validity of their liens, and alleged fraud as a defense against LaPuzza. Additionally, defendant counterclaimed for reformation of the written contract between it and LaPuzza on the grounds of fraud and misrepresentation.

The trial court determined that LaPuzza had a valid and subsisting lien in the amount of $105,143.52. Plaintiff Frazier-Shurkamp, Inc., was adjudged to have a valid and subsisting lien for the sum of $4,763.99. The other plaintiffs were also adjudged to have valid liens, but they were included in the lien of LaPuzza.

Four other liens were filed against the property subsequent to the filing of the petition herein. These parties were not joined in the action, although defendant moved to make them parties more than 7 months after the action was commenced. This motion was denied, but LaPuzza was ordered to pay certain amounts to these four and to indemnify and hold defendant harmless from any claim, demand, liability, or cause of action arising out of or in connection with the filing of said mechanic's liens.

Defendant's first assignment of error is the failure of the trial court to order joinder of the four parties referred to above. Defendant refers to section 25-323, R. R. S. 1943, which reads as follows: "The court may determine any controversy between parties before it, when it can be done without prejudice to the rights of others, or by saving their rights; but when a determination of the controversy cannot be had without the presence of other parties, the court must order them to

be brought in." The liens were not of record at the time of the commencement of the action herein. The motion to make them parties was filed more than 7 months after the commencement of these proceedings. It is difficult to justify the long delay. These lienholders were necessary parties. However, subsequent to the decree LaPuzza paid the claims of the lienholders and those claims are included in his lien. A certificate showing the satisfaction of those liens has been filed herein. The trial court was wrong in refusing to order the joinder of the four parties. On this record, however, under the circumstances herein it is error without prejudice.

Defendant's principal defenses are premised upon its allegation of fraud in the inception of the contract, and fraud in the padding of bills included in the liens. Defendant pled fraud as a defense to the written contract and sought reformation based on that fraud. It sought to introduce evidence bearing on this issue through several of the participants. While the evidence was excluded it is included in the record by virtue of offers of proof. Defendant does not seek to avoid the contract but rather to restrict it to a maximum of $50,000. It is defendant's contention LaPuzza represented the contract would not exceed $50,000 but would not sign a contract for that figure because he could get a better deal with his subcontractors if he did not have a fixed sum.

Defendant is seeking reformation based on fraud in the inception. It premises that fraud on its allegation plaintiffs agreed the cost would not exceed a certain figure. The contract was prepared by defendant's attorneys. Any such agreement should have been included in the terms of the contract if it was to be effective. Defendant is now seeking to reform the contract by parol evidence asserting an agreement which allegedly was made before the contract was signed.

This court has consistently held: " "* * * if persons to a transaction have put their engagement in writing in such terms as import a legal obligation without uncertainty of the object or extent of the engagement, it is conclusively presumed that the entire engagement of the parties and the extent and manner of their undertaking have been reduced to writing, and any parol agreement is merged in the written contract and testimony of prior or contemporaneous conversations is incompetent.' " Parsons Constr. Co. v. Metropolitan Utilities Dist. (1960), 170 Neb. 709, 104 N. W. 2d 272.

Fraud is never presumed but must be proved by clear and convincing evidence. Defendant's evidence is in the record through offers of proof. This testimony was properly excluded in reliance upon the parol evidence rule. It is true that the defense of fraud may be shown by parol, not to contradict or vary but to destroy the legal and binding effect of a written instrument. Paper v. Galbreth (1931), 121 Neb. 454, 237 N. W. 582. Here, however, defendant is attempting to incorporate a restriction in the contract which according to the inferences from his testimony plaintiff LaPuzza would not accept. On this record defendant is bound by the terms of the written contract.

Defendant in its brief lists five instances of alleged fraud or padding of bills. Defendant is urging that where fraud or padding of a bill is shown by the evidence in the claim for a mechanic's lien, such lien will not be enforced by a court of equity. The controlling rule in this jurisdiction is summarized in Central Constr. Co. v. Highsmith (1952), 155 Neb. 113, 50 N. W. 2d 817, as follows: "Where a claimant, either by gross carelessness or by design, puts upon record a statement which he knows, or which by the exercise of reasonable and proper diligence he might have known, to be erroneous and unjust, either by including items not furnished for the particular building or by failure to

give credit for payments made, the law will not aid him in enforcing his lien. On the other hand, if the errors are trifling and immaterial, or if they are readily explainable as the result of mistake, and no element of willfulness appears, regard will be had for the imperfections of human machinery, and the recovery of a just debt will not be denied where nothing but fair dealing was intended."

Defendant's first contention concerns invoices from Anfra Products. The invoices show a total of $2,422.53. The amount actually paid by plaintiffs was $2,094.01. The difference of $328.52 represented a discount from the supplier to the contractor which plaintiff retained.

The second instance involved a bill submitted by subcontractor Larry Pfeifer for various trench work, in the amount of $150. Mr. Pfeifer testified at the trial that he only charged LaPuzza $75 to do the work although he sent him a bill for $150.

The third instance is with respect to the bill of Millard Lumber Company on which LaPuzza was granted a 2 percent early payment discount which was not passed on to the defendant. This amounted to $108.71.

The fourth instance involved the invoices of Laserowitz & Sons Hardware. They consisted of a $57.50 error in the billing and a credit of $125.54 which had been allowed to LaPuzza but had not been credited to the defendant.

The last instance involves the Manzitto Construction Company which submitted invoices totalling $2,223. The records of LaPuzza, however, show that the amount actually paid was $1,823. Plaintiffs' bookkeeper attempted to explain this discrepancy.

The Laserowitz, Millard Lumber, and Anfra items were all known to defendant prior to the trial through discovery or through Mr. LaPuzza's affidavit. Credits for the Laserowitz and Anfra items were conceded by LaPuzza at the trial, and were proved and granted to

defendant by LaPuzza as a part of his case-in-chief. Plaintiffs' right to the Millard Lumber discount was disputed by LaPuzza but was granted to defendant by the trial court. In a cost plus contract the contractor must credit the owner with all discounts and credits unless the contract specifically provides otherwise. See Jensen v. Manthe (1959), 168 Neb. 361, 95 N. W. 2d 699, in which we held: "* * * the owner is entitled to the benefit of any discount or other reduction of cost accruing to the contractor operating under a cost or cost plus agreement." The Pfeifer item is definitely an overcharge and this item of $150 should be disallowed. The Manzitto claim was obviously found by the trial court to be only a partial payment with $400 still due. We feel there should have been more definite proof of the amount due, and disallow this item of $400. However, it is evident these errors were trifling in comparison to the total amount here in controversy. Further, LaPuzza conceded some of the amounts in presenting his case and some explanation was offered for all but the Pfeifer claim. The trial court determined the questioned items were valid but certain adjustments were required. Considering the fact that he observed the witnesses, we cannot say that he was clearly wrong. We affirm his finding on those items with the exception of the two mentioned, which will result in a credit of $550.

Defendant's next assignment of error raises a question as to the interpretation of the contract. The trial court permitted the contractor to recover as costs F.I.C.A. taxes, unemployment insurance, health and welfare insurance, and employer contributions to pension funds. The pertinent provisions of the written contract were set out in the third and fourth paragraphs of this opinion.

The word "said" in the sentence "the contractor shall not be entitled to reimbursement for any amounts for

said overhead * * *," creates an ambiguity in this provision of the contract. The most logical reference by that term is to the general overhead of the contractor mentioned in the last sentence. Ambiguities in a contract are construed most strictly against its author. Podewitz v. Gering Nat. Bank (1960), 171 Neb. 380, 106 N. W. 2d 497. Without specific reference in the contract we consider F.I.C.A. taxes, unemployment insurance, health and welfare insurance, and employer's contributions to pension funds within the ambit of wages and allowable as costs.

Defendant contests the inclusion of profits and overhead of subcontractors as part of plaintiffs' costs. We do not agree with this interpretation of the contract. Without specific agreement to the contrary, the general rule is as set out in Jensen v. Manthe, *supra:* "Under contracts designated as 'cost plus' agreements, the amount owing the builder should be computed on the basis of the amount actually spent for labor, materials, and supplies which go into and become a part of the finished structure, including the amounts paid to subcontractors. Such items are generally understood to include the cost of supervision, the cost of compensation and liability insurance or other insurance which he is required to carry, and the cost of hauling, storage, and usual operating expenses."

Defendant's next assignment of error attacks the lien of Heyden Tile Company in the amount of $4,746. Mr. Claus Heyden was a part owner of Midstates Terrazzo and Tile Company and Heyden Tile Company. Both companies shared offices and both companies do the same type of work. Employees of both firms performed labor on this job. The amount is not disputed. Defendant questions payment to Heyden because employees of Midstate Terrazzo and Tile Company did most of the work. It argues the trial court should have dismissed the Heyden Tile Company claim for a me-

chanic's lien. Claus Heyden had given an oral bid and subsequently submitted a written proposal on a Heyden Tile Company form. There is no evidence in the record to show Heyden Tile divested itself of its interests prior to filing the lien. In Central Constr. Co. v. Highsmith (1952), 155 Neb. 113, 50 N. W. 2d 817, we held: "The object of the mechanics' lien law being to secure the claims of those who have contributed to the erection of a building, it should receive the most liberal construction to give full effect to its provisions." While the evidence on this claim was not as satisfactory as it could have been, it is sufficient to sustain the finding of the trial court.

Defendant's eighth assignment of error involves the claim of Frazier-Shurkamp, Inc., for $15,801.21. This covered installation, repair of duct, grill, piping, fans, heating, ventilation, and air-conditioning equipment at the Prom Town House. The trial court found that Frazier-Shurkamp had two contracts, one with LaPuzza and one with Prom Town House. Two liens were declared in Frazier's favor, $10,386.17 for the work done for LaPuzza and $4,763.99 for the work done for Prom Town House. No invoices are attached to the mechanic's lien. Apparently the contract with LaPuzza was for installation while the contract with Prom Town House dealt with repair, and apparently replacement of heating equipment. This latter bill was sent directly to Prom Town House.

Section 52-103, R. S. Supp., 1972, states: "Any person entitled to a lien under section 52-101 shall make an account in writing of the items of labor, skill, machinery, equipment rental, fixtures, or material furnished, * * *." Defendant concedes a claimant can file one mechanic's lien for labor and materials for two contracts, as stated in Grove-Wharton Constr. Co. v. Clarke (1910), 86 Neb. 831, 126 N. W. 651, wherein an owner objected to a contractor filing only one me-

chanic's lien for several contracts. There this court, in upholding the validity of the lien, stated: "All of the contracts were oral, and were referred to in one verified claim for a lien filed in the office of the register of deeds."

The lien filed herein mentions both installation and repair, thus referring to both contracts. The amount involved is obviously more than the repair agreement with Prom Town House, but there is no express reference to either contract. In support of defendant's position the lien contains the words "verbal contract" which is a singular reference. The amount involved is more than the contract with Prom Town House, so defendant might well have assumed that it referred to a contract with LaPuzza. Defendant may not have understood that the contract with LaPuzza was for installation only and not repair. More specifically, however, the reference to the dates (viz: February 24 through May 28, 1972) tends to indicate only one contract was intended to be covered. Two separate contracts cannot be tacked to determine the time within which a lien must be filed.

Grove-Wharton Constr. Co. v. Clarke, *supra,* is distinguishable from the instant case. In that case all three contracts were between the owner and the contractor claiming a lien. Here, one contract was between the owner and Frazier, while the other was between the general contractor and Frazier. Further, in Grove all liens were apparently claimed under a single statute. Here, Frazier was a subcontractor with LaPuzza and a contractor with Prom Town House. We find the trial court was in error in allowing Frazier-Shurkamp, Inc., a lien for $4,763.99 under the LaPuzza mechanic's lien.

Defendant in its ninth assignment of error contends interest on a judgment in a mechanic's lien foreclosure action commences from the date of final judgment. The general conditions of the contract for construction in-

volved herein provided: "7.9.1 Any moneys not paid when due to either party under this Contract shall bear interest at the legal rate in force at the place of the Project." The contract further provided when payment was due: Article 6 provided for progress payments; Article 7 for final payment. Interest should have been computed in strict accordance with the contract.

The court did not abuse its discretion in overruling defendant's motion for a continuance. The case had been pending a sufficient time to have permitted defendant in the exercise of due diligence to prepare the case for trial. We suggest parties may not wait until a trial becomes imminent and then expect to secure additional time in which to prepare their case.

We have discussed the assignments of error we considered material herein. We affirm the judgment as modified. Defendant is allowed credit for $550 covering the Pfeifer claim and the overcharge on the Manzitto claim, and $4,763.99 for the Frazier-Shurkamp, Inc., lien. Interest should be recomputed in accordance with the contract provisions. The cause is remanded to the trial court for recomputation of the interest.

The judgment is affirmed as modified.

AFFIRMED AS MODIFIED.