DAVID J. BURHOOP ET AL., APPELLEES, v. B. J. PEGRAM ET AL., APPELLANTS.

234 N. W. 2d 828

Filed October 30, 1975. No. 39913.

Bauer, Galter & Geier, for appellants.

Walter H. Radcliffe, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

BRODKEY, J.

This is an appeal from a judgment entered on October 18, 1974, by the District Court for Lancaster County,

following an extended trial of two separate actions between the parties hereto which by stipulation were consolidated for trial to the court. Both actions involved a contract for the sale of certain real estate in Lincoln, Nebraska. In this opinion B. J. Pegram and Lois Pegram will be referred to as "sellers" and David J. Burhoop and Wendy M. Burhoop will be referred to as "buyers."

The first of the two actions referred to was an action brought by the buyers to recover damages arising out of an alleged breach of a contract for the sale of real estate on the part of the sellers. The buyers alleged that the sellers failed or refused to comply with the terms of a land contract by failing to pay to the buyers a real estate commission agreed upon, and by failing to accept a payment tendered by the buyers to the sellers on the date of closing. The second action referred to was a separate foreclosure action brought by the sellers who alleged that the buyers failed and refused to make payments provided for in that land contract. In its judgment, the court ruled that the buyers could pay the back installments owing under the land contract and take possession of the premises, or in the alternative, a judgment would be awarded to the buyers in the sum of $7,375 plus costs, and title to the property would be quieted in sellers.

The buyers, pursuant to the terms of the judgment, filed a relinquishment of all rights in and to the real estate in question, except for the judgment lien on the property as provided in the judgment, as subsequently modified. Sellers then perfected their appeal to this court in the first of the two consolidated cases, which was the action for damages.

In their appeal, the sellers allege that the trial court erred in awarding judgment to the buyers and in overruling their motion for a new trial, for the reason that the buyers' evidence was not sufficient as a matter of law to sustain a judgment against them. Specifically the

sellers contend that on October 1, 1972, the sale closing date set in the contract, the buyers owed the sellers a downpayment of $10,000 over and above any commission due to the buyers under the terms of the contract, rather than $5,000 as found by the court in its judgment. Sellers also allege as an assignment of error that the ultimate contract signed by the parties, received in evidence as exhibit 3, was ambiguous; and that the court should have looked to the original agreement of the parties, in evidence as exhibit 1, to determine intent and to resolve ambiguities. The issues to be determined in this appeal are, first, whether the parties intended a document referred to by them as "Contract For Conditional Sale of Real Estate," exhibit 3, previously referred to, to be a complete and final expression of their agreement; and second, if so, whether the contract is ambiguous. The District Court found that the contract, exhibit 3, was a final and unambiguous contract for the sale of real estate. We affirm.

The material facts of this case, as revealed by the record, are as follows. The Pegrams were the owners of property legally described as Lots 1, 2, and 3, Block 31, West Lincoln Addition to Lincoln, Lancaster County, Nebraska. They had the property listed for sale with Gateway Realty in Lincoln, Nebraska, which listing, however, expired July 19, 1972. On July 20, 1972, David J. Burhoop, a licensed real estate broker, contacted Mrs. Pegram regarding the sale of the property, and ascertained that she was willing to sell the property on land contract for the sum of $110,000. Mr. Burhoop then informed her that he wanted to earn a commission of $5,000 on the sale in order to protect him from possible claims of another realtor or realty company, and inquired if that was agreeable to her. Mrs. Pegram agreed but stated she wanted to realize $110,000 net from the sale.

On July 22, 1972, an agreement was reached by the parties and reduced to a handwritten document on spiral

notebook paper similar to that commonly found in a secretary's shorthand notebook. The agreement was signed by both parties and was received in evidence as exhibit 1. At the same time, Mr. Burhoop made personal notes, which were not part of the rough draft nor incorporated into the subsequent contract by reference. A subsequent contract was prepared by Mr. Burhoop's attorney, Charles Huff, and was transmitted to Mrs. Pegram's attorney, Paul Galter. The trial court found all parties had adequate notice of the provisions in that contract prior to August 16, 1972, the date of its execution.

That document (exhibit 3) entitled "Contract For Conditional Sale of Real Estate" provided in part as follows:

"I.

The Purchase Price and Manner of Payment

1. The Purchase Price. As the purchase price for the Real Estate, Buyer agrees to pay to Seller and Seller agrees to accept from Buyer the sum of $115,000 Dollars.

2. The Manner of Payment. The purchase price shall be paid in the following manner:

(a) The sum of $500 was paid by Buyer to Seller on July 22, 1972 as earnest money and the receipt of such sum is hereby acknowledged by Seller.

(b) The sum of $5,000 shall be paid by Seller to Buyer on October 1, 1972 as commission for the sale of said Property.

(c) The sum of $4,500 shall be paid by Buyer to Seller on September 1, 1972 as additional earnest money.

(d) The sum of $10,000 shall be paid on Octobet (sic) 1, 1972 by Buyer to Seller, which shall be the balance of the down payment of $15,000, which represents the $500 and $4,500 payments of earnest money plus the $10,000 to be paid on October 1, 1972.

(e) The sum of $1,000 shall be paid on the fifteenth

day of each calendar month hereafter, until the remainder of said purchase price, with interest as herein provided, has been paid in full. Said monthly payments to include interest at the rate of eight (8) percent simple interest per annum computed monthly and to be applied first to accrued but unpaid interest on the unpaid balance of principal to date of payment and then to principal. The first payment hereunder shall be made on January 15, 1973."

This case principally involves the interpretation of subsections (b) and (d) of the above agreement.

On or about October 1, 1972, Burhoop tendered a check for $2,800.21 representing, according to Burhoop, the downpayment of $10,000 minus the commission and the amount of taxes paid by Burhoop. Pegrams refused to accept the check, stating that $7,800.21 was due. The sellers contended that the commission was not to be credited against the downpayment, but that the commission was to be applied against the balance due under the contract, thus providing the sellers with more cash in hand at time of closing.

Sellers point out that the preliminary agreement and notes, previously referred to, both contained calculations indicating that $95,000 was to be the balance carried on contract after the downpayment was made. The "Contract Agreement for Listing and Purchase of Bali Hai NW 10th and Cornhusker Highway" (exhibit 1) contained the following notations as to the terms of the agreement.

| | |
|---|---|
| "$ 5,000.00 | Commission to Dave Burhoop |
| 110,000.00 | Net to Lois Pegram |
| 115,000.00 | Sale Price |
| 5,000.00 | Commission to Dave Burhoop |
| 110,000.00 | Net to Lois Pegram |
| 15,000.00 | Down Payment |
| $ 95,000.00 | Balance to be carried on contract. . ." |

This preliminary contract also provided:

"This is a rough Draft of the contract to be drawn by the attorney of both parties. Said contract to be drawn and accepted by both parties prior to Sept. 1, 1972 (Additional payment date). Said contract to contain all the above terms and any addition terms desired by the attorneys of both parties and agreed to by both parties."

In addition this agreement contained the following provision:

"The commission shall be $5,000.00 Five Thousand and 00/100 Dollars, and shall be paid to Dave Burhoop at time of closing."

The personal notes of Burhoop (exhibit 2) stated the terms as follows:

| | |
|---|---|
| $ 5,000.00 | Commission to Dave Burhoop |
| 110,000.00 | Your price net |
| 115,000.00 | Sale price |
| $ 5,000.00 | Comm. paid to Dave Burhoop |
| 110,000.00 | Net to you |
| 15,000.00 | Down payment |
| 95,000.00 | On contract |

The final contract (exhibit 3), executed on August 16, 1972, did not, however, set forth any specific balance to be carried on the contract. Sellers contend that this renders the contract ambiguous.

The trial court, after considering the evidence, found that exhibit 3, the "Contract For Conditional Sale of Real Estate," drawn by the Burhoops' attorney and given to the Pegrams' attorney to approve, was a final and complete expression of the parties' agreement. The July 22 "rough draft" (exhibit 1) refers to a future contract which would contain any additional terms desired. While Burhoop testified that the price, commission, and downpayment were not to be changed from the July 22 terms, Lois Pegram testified that the parties intended to reduce the contract to a more complete agreement. Ad-

ditional provisions were incorporated providing for apportionment of taxes and insurance, and other matters. The date for payment and commencement of monthly installments was also changed. Pegrams and their attorney made changes in a proposed contract given to them by the Burhoops' attorney. At no time prior to the execution of the "Contract For Conditional Sale of Real Estate" (exhibit 3) did the sellers object to the contents of subsections (b) and (d) of the document.

The evidence shows that the parties viewed the August 16th agreement as the final, complete expression of their negotiated terms. As such, the "contract" (exhibit 3) is an integration of their agreement, and the prior written documents may not be used to vary the terms of the agreement if it is unambiguous.

This court has consistently held that when parties to a transaction "have put their engagement in writing in such terms as import a legal obligation without uncertainty of the object or extent of the engagement, it is conclusively presumed that the entire engagement of the parties and the extent and manner of their undertaking have been reduced to writing, and any parol agreement is merged in the written contract and testimony of prior or contemporaneous conversations is incompetent." LaPuzza v. Prom Town House Motor Inn, Inc., 191 Neb. 687, 217 N. W. 2d 472 (1974). See, also, Transportation Equipment Rentals, Inc. v. Mauk, 184 Neb. 309, 167 N. W. 2d 183 (1969). Nor is written evidence of antecedent understandings and agreements admissible to vary or contradict a later integrated agreement. Knight Bros., Inc. v. State, 189 Neb. 64, 199 N. W. 2d 720 (1972); 3 Corbin on Contracts, § 576. p. 383; Glass v. Nebraska State Bank, 175 Neb. 673, 122 N. W. 2d 882 (1963).

If an integration is ambiguous, however, extrinsic evidence may be admitted to determine the intent of the parties. See, LaPuzza v. Prom Town House Motor Inn, Inc., *supra*; Glass v. Nebraska State Bank, *supra*. A contract is ambiguous when, considered as a whole, it is

capable of being understood in more senses than one. Knight Bros., Inc. v. State, *supra*.

There can be no ambiguity unless an application of the pertinent rules of interpretation leaves it uncertain which of two or more possible meanings represents the true intent of the parties. Master Laboratories, Inc. v. Chesnut, 157 Neb. 317, 59 N. W. 2d 571 (1953).

Ambiguity is measured by an objective standard, not by the subjective contentions of adversaries in a courtroom. That two parties urge opposing interpretations does not necessarily indicate the document is ambiguous. A contract is not ambiguous because it may be difficult to construe. Master Laboratories, Inc. v. Chesnut, *supra*.

It is clear to us from a consideration of the surrounding circumstances that Part I, paragraph 2, has only one meaning—that the commission was to be credited on the downpayment. The previous notations referring to the balance and downpayment do not in themselves create ambiguity in the final draft. Copies of the contract were exchanged, and additions and alterations were made by the Pegrams. They did not object to the wording of subsections (b) and (d) during these negotiations. It would, therefore, be reasonable to assume that the total sales price, not the balance carried on contract, was their principal consideration. Exhibit 3 represented the final meeting of minds of the parties, and superseded any previous discussions and preliminary agreements. It was not ambiguous.

We conclude, therefore, that the District Court was correct in its findings in its judgment entered in this case when it stated that the contract, exhibit 3, was determinative as to the terms and conditions to be performed by each of the parties relative to the sale and purchase of said real estate, and also in its finding of fact that the specific terms of exhibit 3 provide that the commission should be paid on October 1, 1972, by the Pegrams to Burhoop; and, also in its finding as a matter

of law that exhibit 3 was unambiguous and unequivocal. We are also of the opinion that any ambiguity involved in the transactions between the parties is not found in the final contract (exhibit 3), which is clear and explicit; but rather in the preliminary agreement of the parties (exhibit 1) which provided both that the balance to be carried on contract is $95,000, and also provided that a $5,000 commission was to be paid to David Burhoop "at time of closing." It is noteworthy that this last quoted provision was carried over into the parties' final agreement.

Finally, we wish to point out that this was a jury-waived case, tried to the court. In that situation, it is clear that the court determines not only the law applicable to the case but is also the trier of facts. All the contracts and documents involved in this case were offered and received in evidence, and were before the court when it decided the case. The law is well established that in a jury-waived action, the judgment of the District Court on the facts has the same force as a jury verdict and will not be set aside if there is sufficient competent evidence to support it. Winchell v. National Bank of Commerce Trust & Savings Assn., 181 Neb. 870, 152 N. W. 2d 2 (1967). See, also, McBride v. Fort Kearney Hotel, Inc., 185 Neb. 518, 176 N. W. 2d 911 (1970). In this case it is clear that the trial court was correct both on the law and the evidence, and its judgment must be affirmed.

AFFIRMED.