246 N.W.2d 655 (1976)
197 Neb. 34
MICKELSON & MICKELSON HAY CONTRACTORS, a co-partnership of C. E. Mickelson and D. L. Mickelson, Appellants,
v.
Earl CHRISTENSEN, Appellee.
No. 40591.
Supreme Court of Nebraska.
November 10, 1976.
Benjamin M. Shaver, Scottsbluff, for appellants.
Richards & Richards, Chappell, Eugene J. Hynes, Oshkosh, for appellee.
*656 Heard before WHITE, C. J., and SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.
WHITE, Chief Justice.
This case involves a haying contract dispute. The plaintiffs brought two causes of action against the defendant alleging, first, that the defendant wrongfully violated the terms of their agreement, and secondly, that the defendant wrongfully prevented the plaintiffs from further performance under the contract, and sought damages on each count. The defendant filed a counterclaim alleging that the plaintiffs breached the contract by failing to perform satisfactorily and sought damages.
The parties waived a jury trial and the matter was tried to the court. The District Court found that the plaintiffs failed to sustain their burden of proof on their two causes of action and found generally against the plaintiffs. The court further found that the defendant failed to sustain his burden of proof on his counterclaim and generally found against the defendant on the counterclaim. The plaintiff's petition and defendant's counterclaim were dismissed. The plaintiffs appeal. We affirm the judgment of the District Court.
The record reveals the following facts. The hay contract was entered into by the parties on June 5, 1973. It provided that the plaintiffs were to stack "all of the hay located on the property known as the Eldred Ranch * * * which will yield approximately 5000 tons of hay" for the defendant. The plaintiffs were to be paid $6.50 per ton of hay. It was agreed that the term "all of the hay" in the contract meant all the hay that was to be stacked on the Eldred Ranch. The term "which will yield approximately 5000 tons of hay" in the contract, was placed there at the request of Dan Mickelson so that the plaintiff could show the contract to their banker and obtain financing. At the trial, Clarence Mickelson testified that this term was to guarantee the plaintiffs 5,000 tons of hay. The defendant, Earl Christensen, testified that he was not guaranteeing any specific amount of hay. He further testified that there were 5,000 tons of hay on the Eldred Ranch, and that the plaintiffs could have stacked that amount had they gotten after it.
The Mickelsons started working around July 10, 1973. Jack DeWitt, foreman since 1950 at the Eldred Ranch, testified that he had the opportunity to view the Mickelsons' haying operation almost every day as he flew over the ranch checking cattle and fences. He testified that the Mickelsons were "real slow and were broke down a lot and spent a lot of time in the shop." Often there was just one man working. Dan Mickelson testified at the trial that he actually never worked on the Eldred Ranch.
Clarence Mickelson testified that he had 2 brand new swathers and 2 hay busters, one was 2 years old and one was 3 years old. The defendant testified that he saw the Mickelsons' equipment and that it was pretty old and pretty well beat up. He also testified that he never observed the Mickelsons using all their equipment at one time.
Clarence Mickelson testified that under ordinary conditions, they should have been able to put up around 30 stacks per day with 2 hay busters such as his. There was testimony that the Mickelsons were putting up only about 3 stacks per day and that during 1 week they put up only 4 stacks; during another, 5; and another, 17.
There was testimony that the Mickelsons changed sickle blades about once per week. The defendant testified that the Mickelsons did a poor job mowing and left patches of hay on the ground. He testified that a sharp blade should not do this. There was testimony that changing sickle blades twice a day insures that the hay will be properly mowed down.
Clarence Mickelson testified that they stacked approximately 420 stacks. However, he stated that he never made an actual count of the stacks. Allen Reed, who was employed by the Mickelsons, testified that in his opinion they stacked around 450 to 500 stacks. Clarence Mickelson testified that the stacks they put up averaged around 6 tons.
*657 The defendant testified that he counted the stacks put up by the Mickelsons and that there were 219 of them. He stated that in his opinion the stacks put up by them averaged about 2 tons. Jack DeWitt testified that he counted the stacks from the air several times. Gerald DeWitt, a ranch-hand on the Eldred Ranch, testified that he counted the stacks put up by the Mickelsons as he moved them and that he moved 168 of them. He testified that some stacks were left in the meadows and that he did not move about 43 of the stacks put up by the Mickelsons which were already in the yard.
There was testimony that the stacks put up by the Mickelsons were smaller than what is considered customary, and that their stacks had holes, or doughnuts, in them, which would cause water to accumulate in the stacks and spoil the hay. The defendant testified that he had to bring in additional personnel in the latter part of August 1973, because the Mickelsons were not getting the hay stacked that they were supposed to. There was testimony that the haying season should be completed by early September because at that time hay starts to lose its food value and the weather makes it difficult to work.
Clarence Mickelson testified that the defendant told them they were through on September 14, 1973. The defendant testified that the Mickelsons left on September 14, 1973, without informing or notifying him. He stated that he did not tell them they were through, nor did he order them off the place.
Based on a formula supplied by the local A.S.C.S. office, the defendant testified that he computed the hay tonnage put up by the Mickelsons to be 642 tons. At the contract price of $6.50 per ton, this would come to $4,173. During the time that the Mickelsons worked for the defendant they were paid $5,500 plus $597.90 for gas, diesel, and oil expense for a total of $6,097.90.
It is a basic rule that when this court reviews a determination by a trial court, where there is a conflict in the evidence, this court will consider the fact that the trial court observed the witnesses and their manner of testifying and must have accepted one version of the facts over the other. As was stated in Peters v. Halligan, 182 Neb. 51, 152 N.W.2d 103 (1967): "Where there is irreconcilable conflict on a material issue, this court will, in determining the weight of the evidence of witnesses who appear in court to testify, consider the fact that the trial court observed them and their manner of testifying and must have accepted one version of the facts rather than the other."
In this case, the parties waived a jury trial and the case was tried to the court. The judgment of a trial court in an action at law where the jury has been waived has the effect of a jury verdict and it will not be set aside on appeal unless clearly wrong. Crane Co. v. Roberts Supply Co., 196 Neb. 67, 241 N.W.2d 516 (1976).
There was sufficient evidence adduced at the trial to support the District Court's conclusion that the plaintiffs failed to show that they were entitled to any recovery from the defendant based on the contract or otherwise.
The judgment of the District Court is correct and is affirmed.
AFFIRMED.