DON NELSEN CONSTRUCTION COMPANY, A NEBRASKA CORPORATION, APPELLANT, V. PATRICIA A. LANDEN, AN INDIVIDUAL, APPELLEE.

253 N. W. 2d 849

Filed May 25, 1977. No. 40982.

Robert J. Becker and Thomas C. Lauritsen of Swarr, May, Smith & Andersen, for appellant.

Frank Matthews of Matthews, Kelley, Cannon & Carpenter, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, BRODKEY, and WHITE, JJ., and KUNS, Retired District Judge.

WHITE, C. J.

The plaintiff initiated this action by filing in the municipal court of the City of Omaha, Nebraska, a petition alleging that the defendant was indebted to the plaintiff in the sum of $3,542.90 under a written "cost plus 10%" building contract. Included in this sum was $2,400 which represented 10 percent of the $24,000 cost of the lots upon which the plaintiff contractor constructed a residence for the defendant.

The case was tried to the municipal court and that court entered judgment for the plaintiff and against the defendant in the sum of $2,400 plus costs. The defendant appealed from that judgment to the District Court. The District Court vacated the judgment of the municipal court and dismissed the plaintiff's petition at plaintiff's cost. A motion for a new trial was filed by the plaintiff and overruled. The plaintiff appeals to this court. We affirm the judgment of the District Court.

The record reveals the following facts. In August or September 1972, Jack Landen, as agent for the defendant, contacted Mr. Lou Siebold, an agent of the Maenner Company, realtor for the Regency development in Omaha, and offered to purchase, for $24,000, two lots in the Regency area. Several days later, this offer was accepted. The Maenner Company then contacted the plaintiff about building a house for the defendant and suggested to Mr. Landen that he use the plaintiff as the contractor for his house. The plaintiff was one of only two contractors in-

volved with United Benefit Life, the owner, and the Maenner Company, the realtor, in building homes in the Regency complex.

In September 1972, Mr. Landen contacted architect Stanley How and commissioned him to design a house to be built on the two lots in the Regency area. In January 1973, Mr. Landen contacted the plaintiff about building the house Mr. How was then designing. At this time the plaintiff did not own the two lots upon which the house was to be built. On January 23, 1973, the plaintiff had delivered to him the plans for the Landen house and began to work on figures for a bid on its construction.

On March 7, 1973, the plaintiff submitted to the defendant's architect an offer to build the Landen house on the subject lots for a total lump sum of $182,900. This figure included $24,000, the cost of the two lots. This offer was rejected. On March 22, 1973, the plaintiff submitted another letter to defendant's architect and offered to build the Landen home on a "guarantee job cost." According to this letter, "At completion of Townhome, contractor will total all job costs and will add a figure of 10% for contractor's supervision, overhead and profit." This letter made reference to the cost of the lots as follows:

"Means of Payment

"A. Owner to close lots with contractor within 10 days after signing of contract - amount of this item * * * $24,000."

In addition to providing for payment for the lots, it provided for payment of four "draws" at various stages of construction.

The March 22nd letter was not at that time accepted by the defendant, but was followed by a letter dated April 2, 1973. This letter specified a new contract price and listed certain items to be deleted, but made no further mention of the lots. On April 2, 1973, a written agreement, entitled, "Building Contract" was entered into by the parties. In this

agreement the plaintiff agreed to build the Landen home "on a guarantee job cost" basis as per plans and specifications contained within the three letters, which were incorporated into the agreement by reference. The agreement provided:

"Payments to contractor shall be made as follows: 1st draw - (x) - $24,000.00 - Owner to close lot with Don Nelsen Construction Company for the sum of $24,000.00 within fifteen (15) days after signing of contract."

With the exception of one provision inserted by the defendant, the entire "Building Contract" was drafted by the plaintiff.

On February 20, 1973, the plaintiff made an offer to the Maenner Company to purchase the lots upon which the Landen house was to be built. In March 1973, the defendant submitted a written offer to purchase the subject lots from the Maenner Company. On this offer, the original date is stricken out and April 13 written in in long hand. The offer was originally intended to be accepted by United Benefit Life, but this was stricken out and the plaintiff is shown as accepting the offer from the defendant. A deed conveying the subject lots to the plaintiff from United Benefit Life was filed on March 12, 1973, in the register of deeds office.

The record thus reveals that although the defendant had apparently made arrangements with the Maenner Company, the realtor, to purchase for $24,000 the two subject lots in the Regency complex from United Benefit Life, the owner, these lots were instead sold by United Benefit and the Maenner Company to the plaintiff for $24,000 which in turn sold the lots to the defendant for $24,000.

On May 13, 1974, after the house was completed, the plaintiff indicated that it was claiming a 10 percent commission on the $24,000 price of the two lots. The defendant resisted this claim, and this litigation followed.

The defendant's architect testified that his fee is 10 percent of the job costs and that in computing his fee, he did not include any percentage for the cost of the lots. He stated that based upon his experience, the term "job costs" never includes the cost of the land upon which the project is built. Mr. Nelsen testified that where a builder owns a lot and sells the lot to the purchaser and agrees to build a house for the purchaser on a cost-plus basis, it is based upon his experience, the custom of the trade in Omaha, to include the cost of the lot in that cost figure. Two other builders supported Mr. Nelsen's testimony concerning the custom in the Omaha area.

The plaintiff's position is that the agreement between the parties clearly provides that the cost of the lots was a "job cost" to be included in the "all job costs" plus 10 percent method of payment, and that even if the written contract was ambiguous in this regard, such was the intent of the parties to the agreement. The defendant's position is that the contract between the parties was ambiguous; that her interpretation was that the cost of the lots was not a "job cost"; that her interpretation is a reasonable one; and that where a contract is susceptible to two reasonable interpretations, it should be construed against the party which drafted it, the plaintiff in this case. LaPuzza v. Prom Town House Motor Inn, Inc., 191 Neb. 687, 217 N. W. 2d 472 (1974).

The District Court found that during all the negotiations, both oral and written, it was not made clear to the defendant that a percentage of the costs of the lots would be tacked onto the total of the cost-plus contract ultimately agreed upon; that the plaintiff failed to establish a trade custom for this factual situation; that the contractual relationship was not clear; and that under the circumstances the defendant could reasonably not expect to pay a 10 percent commission on the lots.

Supporting the conclusion of the District Court to

the effect that there was no covenant to include the lots as a part of the "job costs" is that labor in its ordinary acceptation is synonymous with "employment," "*job*," or "position." See, 23 Words and Phrases (Perm. Ed.), p. 49; Mowrey v. Mowrey, 328 Ill. App. 92, 65 N. E. 2d 234. We observe that the payment of job costs implies the furnishing of a job site (land) *upon which the job is performed* by the furnishing of labor, materials, et cetera. There is nothing in this contract which would negative the ordinary distinction between *land* costs and *job* costs. We have been unable to find any authority and none is cited to the effect that land costs and job costs are generally considered as one entity. On the contrary under a "cost plus" contract, generally the contractor is not even entitled, in addition to the percentage called for in the contract, to charge for his general or overhead expenses, such as salaries, telephone service, and office supplies, or for his own time in superintending the work, et cetera. 13 Am. Jur. 2d, Building, Etc. Contracts, § 20, pp. 22, 23.

Language used in a contract prepared by one of the parties thereto, which is susceptible to more than one construction, should receive such a construction as the party preparing the same at the time supposed the other party would give to it, or such a construction as the other party would be fairly justified in giving to it. Inland Drilling Co. v. Davis Oil Co., 183 Neb. 116, 158 N. W. 2d 536 (1968).

Ambiguities in a contract are construed most strictly against its author. LaPuzza v. Prom Town House Motor Inn, Inc., *supra.*

The basic question involved in the interpretation of this contract is its meaning in light of all the facts and the circumstances. "The judgment of a trial court in an action at law where a jury has been waived has the effect of a jury verdict and it will not be set aside on appeal unless clearly wrong." Schuler-Olsen Ranches, Inc. v. Garvin, 197 Neb. 746,

250 N. W. 2d 906 (1977). See, also, Mickelson & Mickelson Hay Contractors v. Christensen, 197 Neb. 34, 246 N. W. 2d 655 (1976).

There was sufficient evidence to support the findings made by the District Court; its determination that the written contract was ambiguous is not in error.

The judgment of the District Court is correct and is affirmed.

AFFIRMED.