DONALD E. HANSEN ET AL., APPELLEES, v. CIRCLE LAKE DEVELOPMENT CORPORATION, APPELLANT.

260 N. W. 2d 609

Filed December 28, 1977. No. 41241.

Brogan & Stafford, for appellant.

Hutton & Garden, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

WHITE, C. J.

This is an action by the buyers-plaintiffs to recover $1,000 paid by them to the seller-defendant pursuant to a real estate purchase agreement. Defendant filed a cross-petition alleging that it was entitled to retain the $1,000 as liquidated damages under the agreement. The case was tried to the county court of Madison County which found in favor of the defendant. Plaintiffs appealed that judgment to the District Court, which on October 22, 1976, heard the case on appeal, and on November 29, 1976, reversed the judgment of the county court and found in favor of the plaintiffs. Defendant appeals from the judgment of the District Court. We affirm the judgment of the District Court.

The case below was tried to the court without a jury. "The judgment of a trial court in an action at law where a jury has been waived has the effect of a jury verdict and it will not be set aside on appeal unless clearly wrong." Don Nelsen Constr. Co. v. Landen, 198 Neb. 533, 253 N. W. 2d 849 (1977). See, also, Mickelson & Mickelson Hay Contractors v. Christensen, 197 Neb. 34, 246 N. W. 2d 655 (1976). The District Court, in finding for the plaintiffs, made no findings of fact. Where trial is to the court, "A general finding that the judgment should be for a certain party warrants the conclusion that the trial

court found in his favor on all issuable facts." Burgess v. Curly Olney's Inc., 198 Neb. 153, 251 N. W. 2d 888 (1977).

Defendant built a condominium structure in Norfolk, Nebraska, for the sale of units therein. Plaintiffs entered into a purchase agreement for the purchase of Unit 3 for the sum of $49,900 on September 12, 1974. This purchase agreement contained the following provisions:

"1) The undersigned Buyers jointly and severally promise to purchase the above condominium apartment constructed or to be constructed thereon for a total price of $49,900.00 payable by means of a per cent minimum cash down payment (of which $1,000.00 has been paid per attached receipt and the balance to be paid by financing as follows:

"$48,900.00 upon settlement date October 15, 1974.

"Buyers will close said loan and pay the balance of the minimum cash down payment and closing costs and escrows upon demand of Seller after financing has been procured. If financing cannot be procured, Seller will notify Buyers of such failure and return Buyers' down payment, whereupon this agreement shall be void. * * *

"In the event of the refusal or failure of the Buyers to consummate the purchase, said deposit shall be retained as liquidated damages for breach of said contract."

Plaintiffs delivered a check in the sum of $1,000 to defendant, which was held by it. On September 14, 1974, plaintiffs obtained a mortgage commitment in the amount of $35,000 from the Norfolk 1st Federal Savings & Loan Association. Plaintiffs listed their home for sale, but were unable to sell it. When the mortgage loan commitment expired, plaintiffs notified the defendant that they could not obtain financing and requested the return of the $1,000 check which defendant was holding. Defendant, on Jan-

uary 15, 1975, deposited the check and this litigation followed.

It is plaintiffs' position that their agreement with the defendant to purchase the condominium unit was conditioned upon their obtaining 100 percent financing for the purchase; that this financing included the sale of their house; and that if this financing could not be obtained, the proposed purchase would not transpire and the agreement would be void, with their $1,000 deposit being returned to them.

In order to examine that contention we first look to the words of the purchase agreement. We find the purchase agreement to be ambiguous. While the agreement refers to procuring financing, it does not explain or specify what is meant by that term. A provision of a contract is ambiguous when considered with other pertinent provisions as a whole, it is capable of being understood in more senses than one. Frank McGill, Inc. v. Nucor Corp., 195 Neb. 448, 238 N. W. 2d 894 (1976); Burhoop v. Pegram, 194 Neb. 606, 234 N. W. 2d 828 (1975).

It is thus necessary to resort to parol evidence to explain the meaning of this term in the purchase agreement. A written instrument is open to explanation by parol evidence when its terms are susceptible to two constructions, or where the language employed is vague or ambiguous. Olds v. Jamison, 195 Neb. 388, 238 N. W. 2d 459 (1976). Where a contract is ambiguous, the court must determine the intent of the parties and resolve the ambiguity to give effect to that intent. Spencer-O'Neill House, Inc. v. Denbeck, 196 Neb. 456, 243 N. W. 2d 767 (1976). In trying to determine the meaning of ambiguous terms in a contract the court may, in an attempt to ascertain the intent of the parties to the contract, look to the preliminary negotiations of the parties. Stover v. Ed Miller & Sons, Inc., 194 Neb. 422, 231 N. W. 2d 700 (1975). In such a case, the court may also look at the interpretation placed on the contract by

the parties during the period of performance. Knight Bros., Inc. v. State, 189 Neb. 64, 199 N. W. 2d 720 (1972).

With these rules in mind, we examine the record before us. Plaintiff, Donald Hansen, testified that based upon his conversations with John Hespe, president of defendant corporation, he understood the financing to consist of two elements — obtaining a loan and selling his house. The proceeds from the loan and the equity from his house would be used to purchase the unit in the condominium.

Mr. Hespe testified that on September 12, 1974, the date on which the agreement was signed, Mr. Hansen told him that he would make application for a loan and list his house for sale. On cross-examination Mr. Hespe admitted that Mr. Hansen needed to sell his house to meet the purchase price. The record shows that plaintiffs entered into a listing agreement for the sale of their house on September 13, 1974, the day after the purchase agreement was signed. This listing ran until January 13, 1975.

Mr. Hansen testified that he had met with Mr. Hespe at least once after the agreement was signed and had telephone conversations with him, and on those occasions the topic of discussion was the progress he was making toward selling his home. Hansen testified, and Mr. Hespe agreed during his testimony, that Hansen had asked the defendant to hold his deposit check for a while.

While the purchase agreement called for a settlement date of October 15, 1974, it is clear from the record that the parties gave no effect to this date. Defendant did not cash plaintiff's check until January 15, 1975.

There is ample evidence in the record to support plaintiffs' interpretation of the term "financing" in the purchase agreement. We note that the purchase agreement was drafted by the defendant. "Ambiguities in a contract are construed most strictly against its author." Don Nelsen Constr. Co. v. Landen,

*supra.* There is also ample evidence in the record that plaintiffs' attempt to sell their home was in good faith.

Other contentions raised by the defendant have been examined and found to be without merit.

The judgment of the District Court is correct and is affirmed.

AFFIRMED.