JAMES D. QUINN, TRUSTEE, APPELLANT, V.
GODFATHER'S INVESTMENTS, INC., A NEBRASKA
CORPORATION, ET AL., APPELLEES.

330 N.W.2d 921

Filed March 11, 1983. No. 81-820.

Paul A. Rauth and Ephraim L. Marks of Marks, Clare, Hopkins, Rauth & Cuddigan, for appellant.

Edward G. Warin and Eugene P. Welch of Gross, Welch, Vinardi, Kauffman & Day, P.C., for appellees.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, and HASTINGS, JJ., and BRODKEY, J., Retired.

WHITE, J.

This is a declaratory judgment action brought by James D. Quinn, lessor-appellant, against God-

father's Investments, Inc., the lessee-appellee. (The term appellee hereafter shall refer to both Godfather's Investments, Inc., and William M. Theisen, president and chairman of the board of Godfather's Investments, Inc.) The action sought determination of whether or not the appellee was liable for lost rental income and the value of contemplated leasehold improvements upon a claim arising out of a lease agreement. The trial court entered judgment in favor of the appellee, finding (1) that the lease was ambiguous with respect to the term "financing," (2) that the evidence failed to establish mutual assent among the parties with respect to the terms of said financing, and (3) that the evidence establishes that, had there been such mutual assent, the appellee made a good faith effort to obtain financing. We affirm.

Godfather's Investments, Inc., owns and operates pizza restaurants and also sells franchises to others under the name of Godfather's Pizza. In the fall of 1979 appellee embarked on a plan to erect a home office building to meet its long-term office space requirements. In the course of its search for a suitable site, appellee became interested in leasing and building upon a tract of about 2.7 acres of unimproved land located at 107th and Pacific Streets, Omaha, Nebraska. Title to the property was held in trust by James D. Quinn.

During negotiations between the parties and prior to the execution of the lease, the appellee signed an application with Banco Mortgage Company in an attempt to secure funds for the building project. The application provided that Banco would act at the exclusive agent for the appellee in locating a lender.

On February 14, 1980, after extensive negotiations, the parties executed the lease agreement. The term of the lease was 50 years, commencing June 1, 1980,

with the lessee having two 10-year options to renew. The lease agreement contained the following provision: "33. . . . H. Should Lessee be unable to obtain financing for the construction of the contemplated improvements, Lessee may terminate this lease, provided, however, termination shall not require Lessor to refund any lease payments made prior to termination, and Lessee shall be bound to make any payments becoming due on or before the date of termination."

In January 1980 Banco Mortgage Company had narrowed its list of potential lenders to four: Teachers Insurance and Annuity Association, Pacific Mutual Insurance Company, Metropolitan Life Insurance Company, and Union Labor Life Insurance Company. Between February 5 and February 12, 1980, Banco submitted the appellee's applications for mortgage financing on terms of $1.5 million, approximately 12 percent interest, and a payout on a 15- to 30-year amortization schedule to the above-mentioned insurance companies. None of the four companies were interested in making a loan to the appellee on the terms contained in the applications, nor were any other terms mentioned to appellee at which a loan would have been possible. Because of interest rate increases and unstable market conditions at the time the applications were rejected, Banco recommended that the appellee withdraw from the market until more favorable conditions might prevail.

Due to a dramatic increase in its staff, the appellee decided to rent office space. The appellee formally notified the appellant by letter dated May 2, 1980, that it was terminating the project because it could not obtain financing. This litigation followed.

The appellant's first contention is that this was an equitable declaratory judgment proceeding tried to

the court without a jury and, therefore, this court must redetermine the issues of fact upon a de novo review of the record. This issue was specifically dealt with in *Larutan Corp. v. Magnolia Homes Manuf. Co.,* 190 Neb. 425, 433, 209 N.W.2d 177, 182 (1973), where we stated: "This court has treated the determination of factual issues in a declaratory judgment action which would otherwise be an action at law in the same a anner as if a jury had been waived. The findings of the trial court therefore have the effect of the verdict of a jury and will not be set aside unless clearly wrong."

The proceedings in the trial court clearly took the form of an action at law for damages for the breach of a lease agreement. We therefore find the rule of *Larutan* applicable here.

The appellant also argues that the trial court erred in (1) finding that the lease was ambiguous, (2) finding that the evidence failed to establish mutual assent between the parties as to the meaning of financing, and (3) finding that the appellee had made a good faith effort to obtain financing even if mutual assent to the term was present.

In viewing the lease we are in agreement with the trial court that it was ambiguous. The lease states that should the lessee (appellee) be unable to obtain financing for the construction of the contemplated improvements, the lessee may terminate the lease. The lease fails to explain or specify what is meant by the term "financing." A provision of a contract is ambiguous when, considered with other pertinent provisions as a whole, it is capable of being understood in more senses than one. *Hansen v. Circle Lake Development Corp.,* 199 Neb. 678, 260 N.W.2d 609 (1977).

In interpreting a written contract, the meaning of

which is in doubt and dispute, evidence of prior or contemporaneous negotiations or understandings is admissible to discover the meaning which each party had reason to know would be given to the words by the other party. *Ely Constr. Co. v. S & S Corp.*, 184 Neb. 59, 165 N.W.2d 562 (1969).

The trial court was therefore correct in allowing the admission of parol evidence for the purpose of explaining the true nature of the transaction between the parties.

Although the lease agreement contained the promise that the appellee would attempt to obtain financing in order to construct the leasehold improvements, the parol evidence admitted showed that the parties failed to agree on the exact definition of the term "financing." The trial court held that mutual assent was lacking and therefore a valid contract did not exist.

In discussing the implication of obligations, the writers of 17 Am. Jur. 2d *Contracts* § 255 at 649 (1964) stated: "If it can be plainly seen from all the provisions of the instrument taken together that the obligation in question was within the contemplation of the parties when making their contract or is necessary to carry their intention into effect, the law will imply the obligation and enforce it."

In the instant case, while it might be a better practice to set forth the interest rate, the term, the rate of repayment, and other terms and conditions, it was not necessary to an enforceable agreement because the court implies into the contract that a good faith effort will be made by the person promising to seek financing. See *Hansen, supra*. We find it unnecessary to discuss this point further because the trial court held, in the alternative, that even if a valid contract existed, the appellee made a good

faith effort to accomplish financing for the construction of the leasehold improvements.

There is ample evidence in the record to sustain the trial court's findings that the appellee made a bona fide effort to obtain financing. The appellee made a reasonable effort to determine what type of loan it needed and made a valiant effort to obtain it. Every loan application that was filled out by the appellee contained the same terms. The appellee contacted every possible interested lender under its exclusive contract with Banco. The four insurance companies which turned down the appellee's loan did so without suggesting any different rates at which a loan may have been feasible. It was at this time that Banco advised the appellee to withdraw from the market until it stabilized.

Other contentions raised by the appellant have been examined and found to be without merit.

The judgment of the District Court is correct and is affirmed.

AFFIRMED.